UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| TYRELL SIMMS | ) | 3:21-CV-00492 (KAD) |
| --- | --- | --- |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LT. CUZIO, et al., | ) | |
| *Defendants*. | ) | May 28, 2021 |

**INITIAL REVIEW ORDER**

Kari A. Dooley, United States District Judge

Plaintiff Tyrell Simms ("Simms"), currently incarcerated as a pretrial detainee at Corrigan-Radgowski Correctional Center, brings this civil rights complaint against nine defendants, all employees of the Connecticut Department of Correction ("DOC").[1] His claims arise out of his designation as a Security Risk Group (SRG) member and placement in the SRG Program upon his admission and re-admission to the DOC on various dates. He asserts violations of his First, Eighth and Fourteenth Amendment rights. For the reasons that follow the Complaint is dismissed, in part.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"

---

[1] Simms names: Lt. Cuzio; Captain Durant; Lt. Rivera III; Lt. Finnucan, D-R Investigator Acevedo, Correctional Officer Tardif and Correctional Officer Grady all of whom work at Bridgeport Correctional Center. He also names SRG Coordinator D. Papoosha, and Director of Security, A. Santiago, both of whom work in the central office in Wethersfield.

1

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to construe "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**Allegations**

The Court summarizes the allegations as follows. Simms was arrested and entered DOC custody on January 10, 2019, where he remained in general population and "ticket free" until he bonded out on March 20, 2019. He was arrested and re-entered DOC custody at Bridgeport Correctional Center on May 10, 2019 and was placed in general population where he remained "ticket free." On May 29, 2019, he was placed in segregation for SRG Affiliation. He never received a ticket for SRG Affiliation; he denied gang affiliation and pleaded not guilty. Simms alleges that his designation was punishment for a phone call he made on February 24, 2019 in which he used "urban slang or ebonics and social media posts."

On June 6, 2019, Defendant Grady escorted Simms to the A.P. room shackled and handcuffed. While so restrained, Simms was assaulted by a gang member because the defendants

had designated Simms a "Blood."[2] After the assault, Simms was transferred to Walker Correctional Institution where he remained until he posted bond on September 6, 2019.

On November 4, 2019, Simms re-entered the custody of the DOC as a pretrial detainee. He was escorted straight to segregation without notice or a hearing as to the reason for his placement. Defendant Papoosha sent Simms to Phase 2 of the SRG Program, which exacerbated Simms' difficulty trying to communicate with others in light of the unexpected arrest and return to custody. Simms was designated as a "Blood sub-set" known as the "Bishops," he was told, because he shared a music video on Facebook of a local rap artist and friend whose music he likes.

Thereafter, he was purposefully placed in recreation where he was attacked by gang members who had a rivalry with the Bishops. He was forced to defend himself because Papoosha and Santiago illegally placed him around gang members. As a result, he was sent to Phase I of the SRG Program.

Simms describes the conditions of confinement in the program, both at Walker and Northern. The conditions include solitary confinement, 23 hours per day of in-cell placement Monday through Friday and 24 hours a day on the weekends. He remains handcuffed during recreation, which occurs outside regardless of the weather. He is under constant threat of assault from gang members, especially those who can "slip their cuffs." He is allowed 3 showers a week in "dirty water with blood and feces as well as hair present." He is permitted only 3 phone calls per week and has no access to television, a CD player, a hot pot, nail clippers and multiple other

---

[2] These events are the subject of a previously filed lawsuit against Defendant Brady and are therefore not further discussed in terms of the claims to be asserted in this lawsuit. *See Simms v. Brady*, Dkt. No. 3:20-CV-1719 (KAD). Further, these are the only allegations levied against Officer Brady. Any claims purportedly asserted against Officer Brady are therefore dismissed under the prior pending action doctrine. *See Curcio v. Hartford Financial Services Group*, 472 F. Supp. 2d 239, 243 (D. Conn. 2007).

items. He can have visits from immediate family only. He has no access to religious services nor educational programming. He describes the SRG Program as "torture."

Simms seeks compensatory and punitive damages. He also seeks injunctive relief to include an order that he be released from the SRG Program and that any tickets regarding the same be erased. He seeks an injunction to prevent the defendants from using social media to designate inmates as SRG affiliated.

**Discussion**

Simms asserts that his designation as an SRG member and placement in the SRG Program violated his Fourteenth Amendment procedural due process rights. He asserts a Fourteenth Amendment substantive due process violation arising out of a) the deplorable conditions of confinement in Phase 1 and Phase 2 of the program, and b) the defendants' failure to protect him from the known risk of gang members assaulting him. Finally, Simms asserts a First Amendment violation arising out of his designation as an SRG member in retaliation for his use of social media.[3]

**First Amendment – Retaliation**

This claim is dismissed. This Court has previously held that the use by DOC personnel of social media to investigate and designate inmates as gang affiliated does not run afoul of the First Amendment. Indeed, Simms' designation was not made to punish him for posting on social media or to deter him from doing so in the future. Rather the social media posts were merely the evidence

---

[3] Simms also asserts an Eighth Amendment claim arising out of the same facts. However, claims of pretrial detainees are analyzed under the Fourteenth Amendment. In the case of a person being held prior to trial, "the 'cruel and unusual punishment' proscription of the Eighth Amendment to the Constitution does not apply," because "as a pre-trial detainee [the plaintiff is] not being 'punished.'" *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000).

used to support his SRG designation. The defendants' use of social media posts is no different than if Simms announced upon his arrival at the facility that he was a gang member and the defendants used those statements to designate him to the SRG unit. As this Court previously explained:

> "The First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993); *see United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) (admission of rap lyrics and tattoo images in gang trial does not violate First Amendment; "This challenge is meritless . . . because here the speech is not itself the proscribed conduct. The speech was not the basis for the prosecution, but instead it was used to establish the existence of, and [the defendant's] participation in, the alleged RICO enterprise.") (internal quotation marks and citation omitted). Indeed, social media posts and other speech are oft considered indicative of gang membership in criminal cases. *See*, *e.g.*, *United States v. Garnes*, No. 14-20119, 2015 WL 3574845, at *2 n.1 (E.D. Mich. June 5, 2015) (rejecting First Amendment challenge because rap lyrics relevant to issue of membership in gang); *United States v. Mobley*, No. 1:13-CR-218-CAP-LTW, 2015 WL 3488152, at *4 (N.D. Ga. June 1, 2015) (citing Facebook post displaying gang hand signal in order denying motion to suppress).

*Caves v. Payne*, No. 3:20-CV-15 (KAD), 2020 WL 1676916, at *4 (D. Conn. Apr. 6, 2020), *reconsideration denied*, No. 3:20-CV-15 (KAD), 2020 WL 8991722 (D. Conn. May 1, 2020); *see also Wilson v. Santiago*, 2020 WL 1989135, at *2 (D. Conn. April 27, 2020); *Martinez v. Payne*, No. 3:20-CV-00231 (JAM), 2020 WL 3630422, at *4 (D. Conn. July 4, 2020).

**Fourteenth Amendment – Substantive Due Process**

"A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether . . . by deliberate indifference to conditions of confinement, or otherwise." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d. Cir. 2017). A pretrial detainee can state a substantive due process claim regarding the conditions of his confinement in two ways. He can show that the defendants were deliberately indifferent to the conditions of his confinement or he can show that the conditions are punitive. *Id*. at 34 n.12. Simms alleges both.

To state a claim for deliberate indifference, Simms first must show that the challenged "conditions, either alone or in combination, pose an unreasonable risk of serious damage to his

5

health, which includes the risk of serious damage to physical and mental soundness." *Id*. at 30 (internal quotation marks omitted) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). "[T]he conditions themselves must be evaluated in light of contemporary standards of decency." *Darnell*, 849 F.3d at 30 (citation and internal quotation marks omitted). This inquiry focuses on the "severity and duration" of the conditions, "not the detainee's resulting injury." *Id*. (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)). Conditions are also considered in combination where one combines with another to affect one identifiable human need. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see also Darnell*, 849 F.3d at 32 ("the conditions must be analyzed in combination, not in isolation, at least where one alleged deprivation has bearing on another").

To state a deliberate indifference substantive due process claim, Simms must also show that "the defendant-official acted intentionally to impose the alleged condition" or that he "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

Substantive due process may also be violated if the pretrial conditions are punitive. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In considering such a claim, the "court must decide whether the [condition] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id*. at 538. Absent evidence of an "expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it.'" *Id*. (citation and brackets omitted). "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental

action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id*. at 539.

For purposes of initial review, the Court finds that Simms has plausibly alleged a substantive due process claim, to include both a deliberate indifference component and a punishment component, against Defendants Papoosha and Santiago, as the individuals responsible for the conditions under which the SRG Program is run and Simms' placement in Phase II and then Phase I of the program. *See*, *e.g.*, *Allah v. Milling*, 876 F.3d 48, 58 (2d Cir. 2017), ("[A]lthough plausibly related to security concerns in general, [plaintiff's conditions of confinement in the SRG Program] were so excessively harsh as to be punitive. [Plaintiff] was kept in solitary confinement for 23 hours a day for almost seven months. . . . He received 'absolutely no programming or counselling or therapy' during that period."). However, Defendants Cuzio, Durant, Rivera, Finnucan, Acevedo, and Tardif, all of whom work at Bridgeport Correctional, are not alleged to have any personal involvement in either the conditions of confinement in the SRG Program or Simms' designation to Phase II or Phase I. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (Observing that it is well-settled that the personal involvement of defendants in purported constitutional deprivations is a prerequisite to an award of damages under Section 1983.). The substantive due process claims against these defendants are therefore dismissed.

**Fourteenth Amendment Procedural Due Process Claim**

Simms contends that all defendants violated his right to procedural due process at the initial hearing in and around May 29, 2019. He alleges he received inadequate notice and that "no investigation" occurred. Although Simms describes the hearing as a disciplinary hearing, even though he did not receive an SRG ticket, it appears from his other allegations that he is referring to an administrative classification hearing.

7

On a procedural due process claim, the court evaluates only the procedures used for the hearing officer to reach his decision. *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017). The level of procedural protection required depends on the purpose of the hearing. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). For a disciplinary proceeding, an inmate is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense. *Wolff v. McDonnell*, 418 U.S. 539, 561–70 (1974). For an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).

If, in fact, Simms was designated following an administrative classification hearing, the allegations belie a procedural due process claim as he was advised of the charges and he was permitted to state his views (which he did). If, in fact, this was a disciplinary hearing, the allegations plausibly state a procedural due process claim. The Court therefore permits this claim to proceed for further development of the record against Defendants Cuzio, Durant, Rivera, Finnucan, Acevedo, and Tardif, each of whom is alleged to have had some involvement in the initial designation hearing in or around May 29, 2019. However, neither Defendant Papoosha nor Santiago are alleged to have been personally involved in the procedural due process violation and this claim is dismissed as against them. *See Wright*, 21 F.3d at 501.

**Orders**

The First Amendment retaliation claim premised upon Simms' use of social media, any Eighth Amendment claims, all claims against Defendant Brady, the Fourteenth Amendment procedural due process claim against Defendants Santiago and Papoosha, the substantive due

process claims against Defendants Cuzio, Durant, Rivera, Finnucan, Acevedo, and Tardif, and the claims for damages against all defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b). The case will proceed on the Fourteenth Amendment substantive due process claims against Defendants Papoosha and Santiago and the procedural due process claims against Defendants Cuzio, Durant, Rivera, Finnucan, Acevedo, and Tardif. The Clerk of the Court is directed to **terminate Defendant Brady**.

The Court enters the following additional orders.

(1) **The Clerk shall** verify the current work address for each defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the address provided on or before **June 18, 2021**, and report to the Court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshals Service which shall include the Complaint and this Order. The U.S. Marshal is directed to effect service of the Complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, on or before **June 18, 2021** and to file a return of service on or before **July 1, 2021.**

(3) T**he Clerk shall** send Simms a copy of this Order.

(4) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

9

(5)     The defendants shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **December 28, 2021**. Discovery requests need not be filed with the Court.

(7)     All motions for summary judgment shall be filed on or before **January 28, 2022**.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If Simms changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Simms must give notice of a new address even if he is incarcerated. Simms should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Simms has more than one pending case, he should indicate all the case numbers in the notification of change of address. Simms should also notify the defendants or the attorney for the defendants of his new address.

(10)    Simms shall utilize the Prisoner Efiling Program when filing documents with the Court. Simms is advised that the Program may be used only to file documents with the Court. As local court rules provide that discovery requests are not filed with the Court, discovery requests must be served on defendants' counsel by regular mail.

(11)   The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Simms.

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of May 2021.

/s/ *Kari A. Dooley*

Kari A. Dooley
United States District Judge