UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
TYRELL SIMMS                  :    Civ. No. 3:21CV00492(SALM)
                              :
v.                            :
                              :
LT. CUZIO, et al.             :    August 4, 2022
                              :
------------------------------x
```

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #34]**

Plaintiff Tyrell Simms, a sentenced inmate currently housed at Corrigan-Radgowski Correctional Center ("Corrigan") in the custody of the Connecticut Department of Correction ("DOC"),[1] brings this action as a self-represented party pursuant to 42 U.S.C. §1983, alleging that defendants violated his rights under the Fourteenth Amendment to the United States Constitution.[2] At

_____

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that Simms entered DOC custody on November 4, 2019, and was sentenced on May 4, 2022. See http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=385314 (last visited August 4, 2022).

[2] The Complaint originally included additional claims and defendants, but all other claims were dismissed on initial review. See Doc. #16 at 8-9. Plaintiff elected not to file an Amended Complaint to attempt to state a claim as to any of the dismissed counts or defendants.

all times relevant to his Complaint, plaintiff was a pretrial detainee. The Complaint proceeds on plaintiff's substantive due process claims against defendants Papoosha and Santiago, and plaintiff's procedural due process claims against defendants Cuzio, Durant, Rivera, Finnucan, Acevedo, and Tardif. See Doc. #16 at 9. Each defendant is alleged to be a current or former employee of the DOC. See id. at 1 n.1. The claims proceed against all defendants in their individual capacities for damages, and in their official capacities for injunctive relief.

Pursuant to Federal Rule of Civil Procedure 56(a), all defendants move for summary judgment on plaintiff's remaining claims. See Doc. #34. Plaintiff has filed two responses to defendants' motion, neither of which includes a response to the Statement of Material Facts. See Doc. #35, Doc. #37. For the reasons set forth below, all claims brought against defendants Cuzio, Durant, Rivera, Finnucan, Acevedo, and Tardif in their **official capacities** are **DISMISSED**, and defendants' Motion for Summary Judgment [**Doc. #34**] on the claims remaining is **GRANTED**.

I.   <u>**BACKGROUND**</u>

Plaintiff filed his Complaint on April 8, 2021, making a variety of allegations regarding his designation as a member of a Security Risk Group ("SRG"), and his consequent placement in more restrictive and more dangerous conditions of confinement. See Doc. #16 at 2-4. On initial review, the Court permitted

three claims to proceed: (1) a substantive due process claim against defendants Papoosha and Santiago for deliberate indifference to conditions of confinement that posed an excessive risk to his health or safety; (2) a substantive due process claim against defendants Papoosha and Santiago for his placement in conditions of confinement that were so excessively harsh as to be punitive; and (3) a procedural due process claim against defendants Cuzio, Durant, Rivera, Finnucan, Acevedo, and Tardif, based on his SRG designation in or about May 29, 2019. See Doc. #16 at 7, 8. Although plaintiff cites both the Eighth and Fourteenth Amendments in his Complaint, the Court construes all of the conditions of confinement claims as having been brought pursuant to the Fourteenth Amendment, because plaintiff was a pretrial detainee at the time of the events underlying the Complaint. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment.").

The Complaint contains the conclusory assertion: "Plaintiff has exhausted all remedies the D.O.C. has to offer." Doc. #1 at 7. No specific factual allegations regarding exhaustion are made in the Complaint.

This matter was transferred to the undersigned on October

15, 2021. See Doc. #30.

Defendants moved for summary judgment on each of plaintiff's remaining claims on January 28, 2022. See Doc. #34. As required by the Local Rules, defendants filed a "Notice to Self-Represented Litigant Concerning Motion for Summary Judgment" with their motion. See Doc. #34-14. That Notice was mailed to plaintiff at Corrigan. See id. at 13. The Notice warns plaintiff: "THE MOTION MAY BE GRANTED AND YOUR CLAIMS MAY BE DISMISSED WITHOUT FURTHER NOTICE IF YOU DO NOT FILE PAPERS AS REQUIRED BY RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND RULE 56 OF THE LOCAL RULES OF CIVIL PROCEDURE, AND IF THE MOTION SHOWS THAT THE MOVANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW." Id. at 1.

On February 22, 2022, plaintiff filed a one-page response to defendants' Motion for Summary Judgment. See Doc. #35. Plaintiff did not respond to defendants' Statement of Material Facts or offer evidence in opposition to defendants' motion. Instead, plaintiff's response asserted that he "filed grievances until my remedies were exhausted." Id. at 1. In response, on February 23, 2022, the Court entered an Order on the docket regarding the Motion for Summary Judgment, and the need for plaintiff to respond fully:

> ORDER. On January 28, 2022, defendants filed a motion
> for summary judgment, contending that plaintiff failed
> to exhaust his available administrative remedies, and

arguing generally that defendants are entitled to judgment as a matter of law. See Doc. #34. The motion attached the required Notice to Self-Represented Litigant Concerning Motion for Summary Judgment, see Doc. #34-14, and the entire packet was mailed to plaintiff at his address of record.

Plaintiff has filed a one-page response to the motion, focused largely on the exhaustion issue. See Doc. #35. He has not provided any response to defendants' Statement of Material Facts, nor has he offered any evidence in support of his objection.

As the Notice accompanying the summary judgment motion explains, an opposition to summary judgment "must show that (1) you disagree with the movant's version of the facts; (2) you have admissible evidence contradicting the movant's version; and (3) the evidence you rely on, if believed, would be sufficient to support a judgment in your favor." Doc. #34-14 at 1. "To make this showing, you must file **evidence**, such as one or more affidavits disputing the movant's version of the facts." Id. (emphasis added). The Notice further instructs plaintiff to read Rule 56 carefully, and warns him that he "must respond to specific facts the movant claims are undisputed" and that he "must support [his] claims with **specific references to evidence**[.]" Id. at 2 (emphasis added).

Plaintiff's submission does not meet the requirements of Rule 56. In light of his self-represented status, the Court will give him an additional opportunity to file an adequate response. Plaintiff may file a further response to the motion for summary judgment **on or before March 14, 2022.**

Plaintiff is advised that he should carefully review the motion, memorandum, and all attachments, as well as the Federal and Local Rules and the Notice to Self-Represented Litigant, when preparing his response. **If plaintiff fails to provide a specific response to defendants' Rule 56(a)(1) Statement of Undisputed Facts, the Court will accept those facts, to the extent they are supported by the record, as true.**

Doc. #36. This Order was delivered to plaintiff through the

Prisoner E-Filing program, at Corrigan.

On March 10, 2022, plaintiff filed a further response to the Motion for Summary Judgment, again focused largely on the exhaustion issue. See Doc. #37. Plaintiff has not filed any response to defendants' Rule 56(a) Statement of Material Facts.

## II.  LEGAL STANDARD

> The standards governing summary judgment are well-settled. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)[.]

Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). Summary judgment is proper if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." Marvel Characters, 310 F.3d at 286. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (citation and quotation marks omitted).

"Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule[.]" D. Conn. L. Civ. R. 56(a)(1); see also Ortiz v. Santora, 223 F. Supp. 2d 387, 393 (D. Conn. 2002) (Where plaintiff fails to oppose a motion for summary judgment, "the Court accepts as true all factual allegations in the admissible materials accompanying the motion for summary judgment, see Fed. R. Civ. P. 56(e), and assesses only whether any genuine issue of material fact remains for trial on the summary judgment record as it stands.").

The Court construes the Complaint in this case as a

"verified complaint" because it includes the following statement:

> I, plaintiff, hereby do so verify that I have read the foregoing complaint, and, the information asserted therein is true and correct, except, as to matters alleged upon information and belief, and, as to those, I believe them to be true and correct. I declare under penalty of purjury the foregoing is true and correct to the best of my knowledge and belief.

Doc. #1 at 7 (sic). "It is true that a verified complaint may serve as an affidavit for summary judgment purposes provided it meets the other requirements for an affidavit under Rule 56(e)." Monahan v. New York City Dep't of Corr., 214 F.3d 275, 292 (2d Cir. 2000). However, if the statements in such a complaint are speculative and unsupported, they are insufficient to defeat a motion for summary judgment. See Curtis v. Cenlar FSB, 654 F. App'x 17, 20 (2d Cir. 2016).

Parties who choose to ignore their obligations at summary judgment under the Local Rules "do so at their own peril." Genova v. Cnty. of Nassau, 851 F. App'x 241, 244 (2d Cir. 2021). Where a "plaintiff fail[s] to provide a statement of material facts to which he contends there is a genuine dispute ... the court can properly accept the defendant's statements as true." Knowles v. Postmaster Gen., U.S. Postal Serv., 656 F. Supp. 593, 598 (D. Conn. 1987).

## III. **DISCUSSION**

Defendants move for summary judgment on plaintiff's

remaining claims, claiming that "Plaintiff failed to exhaust his administrative remedies as to each of his claims prior to filing suit[,]" and that, even if he had exhausted his administrative remedies, the undisputed facts demonstrate that plaintiff cannot sustain his claims. Doc. #34-1 at 1.

### A.   Official Capacity Claims

The Initial Review Order is not entirely clear as to whether the Court intended to permit the Complaint to proceed as to any claims against defendants in their official capacities. The conclusion of the IRO states that "the claims for damages against all defendants in their official capacities are dismissed[,]" but does not expressly state whether the claims against defendants in their official capacities were permitted to go forward as to any claims for underlined injunctive relief. Doc. #16 at 9. However, the reviewing court ordered official capacity service to be made on all defendants. See id. The undersigned therefore presumes that the official capacity claims were permitted to proceed.

The Complaint seeks the following injunctive relief: "I want the courts to order the defendants to stop using social media to affiliate inmates. To give every newly admitted inmate a hearing before placing him in SRG or in a certain phase. To stop placing pretrial detainees in phase or or two solitary confinement." Doc. #1 at 6 (sic). The Complaint also seeks the

following, described as "declaratory relief[,]" which the Court construes as seeking additional <u>injunctive</u> relief, because it demands affirmative relief rather than a mere declaration: "I want the courts to declare that the defendants release me from solitary confinement and to erase all of my tickets in S.R.G. I want to be released from this Security Risk Group Program." <u>Id.</u> (sic).

Defendants Cuzio, Durant, Rivera, Finnucan, Acevedo, and Tardif, are alleged to be employees of DOC who are or were assigned to Bridgeport Correctional Center ("BCC"). <u>See</u> Doc. #1 at 1-2.[3] Plaintiff was transferred from BCC to MacDougall-Walker on June 21, 2019, and has not returned to BCC; he is currently in custody at Corrigan. <u>See</u> Doc. #34-3 at 2 (DOC Inmate Movement Report); <u>see also</u> Note 1. "An inmate's transfer from a prison facility moots his claims for declaratory or injunctive relief against officials of the transferring facility." <u>McCray v. Lee</u>, 963 F.3d 110, 117 (2d Cir. 2020). Accordingly, any claims for declaratory or injunctive relief against defendants Cuzio, Durant, Rivera, Finnucan, Acevedo, and Tardif, are **DISMISSED**.

Defendants Papoosha and Santiago, however, are alleged to

---

[3] Plaintiff refers to the relevant facility as "Bridgeport County Jail" but the Court takes judicial notice of the DOC website, which reflects that the only DOC facility in Bridgeport, Connecticut, is BCC. <u>See</u> https://portal.ct.gov/DOC/Miscellaneous/Facilities.

be the "statewide SRG Coordinator" and the "Director of security" for DOC, respectively. Doc. #1 at 2. Accordingly, plaintiff's claims for injunctive or declaratory relief against these defendants are not mooted by his transfer within the DOC system. The Court will consider these claims in its ruling on the motion for summary judgment.

**B.    Failure to Respond to Rule 56(a) Statement**

As described in detail above, plaintiff submitted two responses to defendants' motion for summary judgment: a one-page statement filed February 22, 2022, see Doc. #35, and a one-page statement filed March 10, 2022, which is accompanied by six pages of attachments, see Doc. #37. After reviewing the first response, the Court specifically warned plaintiff: "**If plaintiff fails to provide a specific response to defendants' Rule 56(a)(1) Statement of Undisputed Facts, the Court will accept those facts, to the extent they are supported by the record, as true.**" Doc. #36 (emphasis in original). The second response nonetheless failed to include any response to the Rule 56(a)(1) Statement. See Doc. #37.

Thus, plaintiff has not filed any response to the Rule 56(a)(1) statement, in spite of multiple warnings regarding the need to do so. Accordingly, the Court will accept as true any fact asserted in defendants' Rule 56(a)(1) statement that is supported by the record and not adequately refuted by the

Verified Complaint or responses to summary judgment.

The Court has considered plaintiff's responses (Doc. #35 and Doc. #37); the attachments to plaintiff's second response (Doc. #37); and the allegations in his Verified Complaint (Doc. #1); in determining whether defendants' asserted material facts are in fact undisputed, and whether they are adequately supported by the record as a whole.

### C.  Exhaustion of Administrative Remedies

"The PLRA's exhaustion requirement provides that '[n]o action shall be brought with respect to prison conditions under [42 U.S.C.] section 1983 ..., or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" Saeli v. Chautauqua Cnty., NY, 36 F.4th 445, 453 (2d Cir. 2022) (quoting 42 U.S.C. §1997e(a)); see also Medina v. Somers, No. 3:10CV00299(JBA), 2011 WL 2844301, at *2 (D. Conn. July 14, 2011).[4] "The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, regardless of whether the inmate may obtain the specific relief he desires

---

[4] The Court notes that where the term "inmate" or "prisoner" is used in the exhaustion context, it applies equally to pretrial detainees. See, e.g., Dickinson v. York, 828 F. App'x 780, 782 (2d Cir. 2020) (finding that pretrial detainee was required to exhaust administrative remedies under PLRA); Ruggiero v. Cnty. of Orange, 467 F.3d 170, 173 (2d Cir. 2006) (same).

through the administrative process." <u>Medina,</u> 2011 WL 2844301, at

*2.

> A claim is not exhausted until the inmate complies with
> all administrative deadlines and procedures. <u>See</u>
> <u>Woodford v. Ngo</u>, 548 U.S. 81, 90 (2006). Informal efforts
> to put prison officials on notice of inmate concerns do
> not satisfy the exhaustion requirement. <u>See</u> <u>Macias v.</u>
> <u>Zenk</u>, 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to
> file a grievance about an issue has passed, claims
> concerning that issue are unexhausted and barred from
> federal court. <u>See</u> <u>Woodford</u>, 548 U.S. at 94-95. In
> addition, the inmate must exhaust his administrative
> remedies for each claim he asserts in federal court. <u>See</u>
> <u>Baldwin v. Arnone</u>, No. 3:12CV00243(JCH), 2013 WL 628660,
> at *5 (D. Conn. Feb. 18, 2013).

<u>Jones v. Johnson</u>, No. 3:15CV01135(DJS), 2017 WL 1843692, at *3

(D. Conn. May 8, 2017).

Exhaustion is required, under the PLRA, for claims relating

to conditions of confinement. <u>See</u> <u>Taylor v. New York City Dep't</u>

<u>of Corr.</u>, 849 F. App'x 5, 9 (2d Cir. 2021) ("Since the

conditions-of-confinement and access-to-courts claims were

grievable, and therefore subject to the IGRP appeals process,

Taylor's failure to appeal the non-responses to these grievances

constituted a failure to exhaust his administrative remedies.").

The exhaustion requirement applies to claims that an inmate was

improperly designated as a gang member or "security risk," such

as Simms brings here. <u>See</u>, <u>e.g.</u>, <u>Johnson v. King</u>, No.

3:18CV01475(SRU), 2019 WL 6770043, at *4 (D. Conn. Dec. 12,

2019).

Defendants contend: (1) "Plaintiff Did Not Properly Exhaust

His Administrative Remedies With Regard To His Remaining Substantive Due Process Claims, As He Failed To File Level 1 Grievances[,]" Doc. #34-1 at 11;[5] and (2) "Plaintiff Did Not Properly Exhaust His Administrative Remedies With Regard to His Procedural Due Process Claim, Because The Appeal He Filed Did Not Raise The Same Procedural Due Process Issues Alleged In His Operative Complaint." Doc. #34-1 at 8.

1.  Substantive Due Process -- A.D. 9.6

DOC has adopted Administrative Directives ("A.D.") governing the process by which an inmate or pretrial detainee may "seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority." Doc. #34-7 at 2.[6] A.D. 9.6, the relevant provision for purposes of plaintiff's substantive due process claims, "requires an aggrieved inmate to first seek informal resolution of his issues, in writing, through the use of an Inmate Request Form (Form No. CN 9601), prior to filing a formal grievance." Doc. #34-2 at 8, ¶59. Thereafter, "an inmate must file their

---

[5] The two substantive due process claims proceed against defendants Papoosha and Santiago only, for deliberate indifference to conditions of confinement that posed an excessive risk to plaintiff's health or safety, and for placing plaintiff in conditions of confinement that were so excessively harsh as to be punitive. The Court considers the exhaustion as to each substantive due process claim separately.

[6] Plaintiff has not disputed the applicability of A.D. 9.6.

Level-1 grievance within thirty days of the cause of the grievance." Id. at 8, ¶61.

This Level 1 grievance must be submitted on a "CN 9602, Inmate Administrative Remedy Form[,]" and the inmate must "attach CN 9601, Inmate Request Form, containing the appropriate staff member's response[.]" Doc. #34-7 at 7. "If the inmate was unable to obtain a blank CN 9601, Inmate Request Form, or did not receive a timely response to the inmate request, or for a similar valid reason, the inmate shall include an explanation indicating why CN 9601, Inmate Request Form, is not attached." Id.

A.D. 9.6 provides that each Level 1 grievance "shall be reviewed for compliance with the Inmate Grievance Procedure and investigated if the grievance is accepted." Id. at 8. DOC staff must respond "in writing within 30 business days of receipt[.]" Id. An inmate's grievance may be "Rejected, Denied, Compromised, Upheld or Withdrawn." Id. at 7.

"An inmate may appeal a Level 1 disposition to Level 2[.]" Id. at 8. Any Level 2 appeal must be filed either "within five (5) calendar days of [the inmate's] receipt of the decision[,]" id., or "within 65 days of the filing of the Level-1" grievance if no response to that grievance is received. Id. at 9. "A grievance appeal filed by an inmate confined in a Connecticut correctional facility shall be decided by the appropriate

District Administrator[]" "within 30 business days of receipt[.]" Id. at 8. Level 2 is "the final level of appeal for all grievances except as provided in Section 6(L)" of A.D. 9.6. Id.[7]

   2.   Substantive Due Process -- Deliberate Indifference to Conditions of Confinement Posing An Unreasonable Risk to Safety

Defendants do not differentiate, in their analysis, between the two substantive due process claims that were permitted to proceed at initial review. However, the Initial Review Order found that plaintiff asserted two separate Fourteenth Amendment substantive due process violations "arising out of a) the deplorable conditions of confinement in Phase 1 and Phase 2 of the [SRG] program, and b) the defendants' failure to protect him from the known risk of gang members assaulting him." Doc. #16 at 4. Defendants contend that plaintiff failed to adequately exhaust his administrative remedies because he "filed no grievances or grievance appeals regarding his Fourteenth Amendment Substantive Due Process claims." Doc. #34-1 at 5. The Court addresses each substantive due process theory separately,

_____

[7] In limited circumstances, an inmate may appeal a Level 2 disposition to Level 3. See Doc. #34-7 at 8. Level 3 review is available only if the grievance: "1. challenges Department level policy; 2. challenges the integrity of the grievance procedure; or, 3. exceeds the established 30 business day time limit for a Level 2 grievance response." Id. None of these circumstances are applicable here.

beginning here with the failure to protect claim.

Both plaintiff's and defendants' summary judgment submissions include a copy of a Level 1 Grievance filed by Simms on November 30, 2019, in which plaintiff asserts that he "was put in harms way and the D.O.C. staff failed to protect me, which is a violation to my 8th Amendment rights[.]" Doc. #34-6 at 4; Doc. #37 at 7 (sic). This grievance relates to an incident that occurred on June 6, 2019, in which plaintiff was assaulted by another inmate.

The November 30, 2019, grievance was denied as untimely, because it was not filed within 30 days of the incident. See Doc. #34-6 at 4; Doc. #37 at 7. Plaintiff filed a Level 2 grievance appeal of that decision, asserting that although the November 30, 2019, grievance was untimely, he had in fact submitted a grievance "2 weeks after the assault took place" but that he had never received a response. Doc. #34-6 at 3; Doc. #37 at 6. Plaintiff has produced no evidence in support of this claim. To the contrary, the undisputed evidence of record indicates that no such grievance was filed.

The Court has previously addressed the question of the timeliness of this grievance in its summary judgment ruling in another matter brought by plaintiff. See Simms v. Grady, No. 3:20CV01719(SALM), 2022 WL 1094077 (D. Conn. Apr. 12, 2022). As the Court noted in that case, the November 30, 2019, grievance

"describes the June 6, 2019, incident, but makes no claim that Simms had filed a prior Level-1 grievance about the incident." Id. at *5.

At his deposition, plaintiff reiterated his claim that he had filed a previous grievance relating to the June 6, 2019, incident, testifying: "After -- after the first time -- after the first time when I -- when I -- when I filed a grievance, I went -- I went home. So I came back -- coming back into jail I was able to have paper and a pen and -- at Walker when I was back. And that's when I filed the grievance." Doc. #34-4 at 32. This testimony is the only evidence supporting the claim that a timely grievance was filed regarding the June 6, 2019, incident.

As the Court noted in its ruling in plaintiff's other case, "the language of Simms' November 17, 2019, Level-1 grievance strongly suggests that it was, in fact, his first grievance about the incident. He states that the Inmate Request Form is not attached because he received no response to it within 15 days, but makes no claim that he in fact filed a previous formal Level-1 grievance." Simms, 2022 WL 1094077, at *5 n.4; see also Doc. #34-6 at 4; Doc. #37 at 7. This supports an inference that the November 17, 2019, Level 1 grievance was the first formal grievance Simms filed about the incident. However, even construing the facts in favor of plaintiff, and assuming that he did file a previous timely Level 1 grievance, there is no

evidence at all, even in the form of testimony from plaintiff, that he appealed that grievance to Level 2. There is no dispute of fact, therefore, that even if plaintiff filed a Level 1 grievance in June 2019, he did not appeal that grievance to Level 2.

Plaintiff did not claim at his deposition that he ever appealed the purported June 2019 grievance. To the contrary, plaintiff agreed that the only Level 2 Grievance he filed regarding the June 6, 2019, assault was filed in December 2019, and that he "didn't file any other Administrative Remedies regarding the claims in this lawsuit or the defendants in this lawsuit[.]" Doc. #34-4 at 36. Plaintiff's responses to the motion for summary judgment likewise indicate that he did <u>not</u> appeal the purported June 2019 grievance. Plaintiff asserts in his first response: "I filed a level-1 grievance while at BCC[.] ... I went home from my incarceration on September 6th 2019. When I came back to prison I filed grievances on the assault from June 6th[.]" Doc. #35 at 1. In his second response, plaintiff likewise asserts: "I filed a grievance at BCC in May & I went home from prison on Sept 6th 2019 and I didn't get a response for my grievance that I could file my complaint!" Doc. #37 at 1 (sic).

A plaintiff who files a Level 1 grievance must pursue "the available remedy of filing a 'level two grievance'" to properly

exhaust his administrative remedies. Gibson v. Goord, 280 F.3d 221, 223 (2d Cir. 2002); see also Ben-Israel v. Diaz, No. 3:18CV01723(VLB), 2019 WL 4738858, at *4 (D. Conn. Sept. 27, 2019) ("A grievance that is denied or rejected may be appealed to the next level. ... Thus, under the directive, plaintiff was able to appeal the rejection to Level 2 and was required to do so to complete the exhaustion process. Plaintiff failed to fully exhaust his administrative remedies before commencing this action." (citations omitted)); Morales v. Dzurenda, No. 3:07CV01220(CFD), 2009 WL 8695525, at *4 (D. Conn. Sept. 8, 2009), aff'd, 383 F. App'x 28 (2d Cir. 2010) ("Morales did not comply with the requirements of Administrative Directive 9.6 for filing a Level 2 Grievance in order to appeal the denial of the Level 1 Grievance. Thus, he did not properly exhaust his administrative remedies.").

Construing plaintiff's submissions very generously, they may be read to assert that plaintiff was unable to pursue his administrative remedies because he "went home" before receiving a response to the purported May 2019 Level 1 grievance. Doc. #35 at 1. However, plaintiff was not released from custody until September 6, 2019, a full three months after the incident. See Doc. #34-3 at 2. Plaintiff asserts that he filed this grievance while still at BCC. See Doc. #35 at 1. He was transferred to another facility on June 21, 2019, see Doc. #34-3 at 2, so he

must have filed the purported timely grievance no later than
June 20, 2019. If plaintiff had filed a Level 1 grievance on
June 20, 2019, and received no response, or a rejection, he
would have been required to file a Level 2 Grievance appeal, in
order to exhaust his administrative remedies. See Doc. #34-7 at
8. Any Level 2 appeal must be filed either "within five (5)
calendar days from [the inmate's] receipt of the decision[,]"
id., or "within 65 days of the filing of the Level-1" Grievance
if no response to that grievance is received. Id. at 9. If
plaintiff received no response to the purported June 20, 2019,
Level 1 Grievance, he would therefore have been required to file
a Level 2 appeal within 65 days, that is, on or before August
24, 2019. Plaintiff remained in DOC custody until September 6,
2019, but as noted, he does not claim to have filed any Level 2
Appeal related to that purportedly timely grievance.

Plaintiffs "who were incarcerated at the time that their
claim accrued, were later released from prison, but did not file
a lawsuit with respect to prison conditions until after they
were again incarcerated[]" are required to exhaust their
administrative remedies. Gibson v. Brooks, 335 F. Supp. 2d 325,
330 (D. Conn. 2004). The Second Circuit has expressly affirmed
that a plaintiff who "could have exhausted remedies ... prior to
his" release from custody must do so under the PLRA. Berry v.
Kerik, 366 F.3d 85, 88 (2d Cir. 2004). Simms could have

exhausted his administrative remedies before his release in 2019. He failed to do so.

Defendants have submitted evidence, including plaintiff's own testimony, conclusively establishing that plaintiff failed to exhaust his administrative remedies as to his substantive due process claims relating to the failure to protect him from a known risk of attack. Plaintiff has not responded to defendants' Statement of Material Facts, despite being provided multiple opportunities to do so.

The undisputed evidence of record establishes that plaintiff failed to exhaust his administrative remedies as to this claim. Accordingly, summary judgment is **GRANTED** in favor of defendants Papoosha and Santiago as to the substantive due process claims relating to the "failure to protect [plaintiff] from the known risk of gang members" in SRG custody. Doc. #16 at 4.

3.   <u>Substantive Due Process -- Punitive Conditions of Confinement</u>

Plaintiff's other substantive due process claim relates to "the deplorable conditions of confinement in Phase 1 and Phase 2 of the program[.]" Id. The Complaint makes numerous allegations in support of this claim. See Doc. #1 at 5. For example, plaintiff alleges that he was "subject to 23 hours a day in my cell Monday through Friday, and 24 hours in my cell on the

weekends." Id. Furthermore, plaintiff asserts that he was "only allowed 3 showers a week in dirty water with blood and feces as well as hair present." Id. Finally, plaintiff states that he had "no access to television, CD player, hot pot, nail clippers, and multiple other items only Phase 3 can have and order." Id.

As described in detail above, plaintiff contends that he submitted a grievance relating to the assault that occurred on June 6, 2019. He does not, however, contend that he filed any grievance regarding the "deplorable conditions" to which he was subjected while in Phase 1 or Phase 2. The Court has reviewed all of the evidence submitted, and finds no indication that plaintiff ever engaged in the administrative remedy process as to these claims. Exhaustion of these claims was required under the PLRA. See, e.g., Ortiz v. McBride, 380 F.3d 649, 651–52 (2d Cir. 2004) (finding exhaustion was required where plaintiff brought conditions of confinement claim complaining of, inter alia, denial of personal hygiene products, inability to shower, confinement to cell for long stretches of time).

It is thus even more clear, based on the undisputed evidence of record, as to this substantive due process claim that plaintiff failed to exhaust his available administrative remedies. Accordingly, summary judgment is **GRANTED** in favor of defendants Papoosha and Santiago as to the substantive due process claims relating to the "deplorable conditions" of

confinement in SRG custody. Doc. #16 at 4.

### 4.    Procedural Due Process -- Exhaustion

The Court's conclusion is different as to exhaustion of plaintiff's procedural due process claims relating to his Spring 2019 SRG hearing and subsequent SRG designation.[8]

"Inmates do not file a Level 1 Grievance to seek administrative review of an SRG Member Designation decision." Doc. #34-2 at 8, ¶63. Rather, "[i]nmates seeking to appeal an SRG designation must file an appeal of the decision by completing and deposition a CN 9602 form within 15 calendar says of the notice of the decision." Id. at 8, ¶64 (sic).

Plaintiff "filed an appeal of his SRG designation on June

---

[8] The Complaint also asserts that upon reentry to DOC custody on November 4, 2019, plaintiff was: (1) "escorted straight to segregation as a pretrial detainee with no notification, no ticket, never offered a hearing, never given a chance to prove my innocence, never given a chance to call witness prior to being subjected to punitive treatment[,]" Doc. #1 at 3 (sic); and (2) "never had a 90 day review[.]" Id. at 4. At the initial review stage, the Court treated these allegations as supporting the procedural due process claim challenging the SRG designation process, rather than as a separate claim. Even if the Court were to construe these allegations as attempting to assert a distinct claim, they would be barred. Plaintiff admitted at his deposition that the only administrative relief he sought pertained to: (1) his appeal of the Spring 2019 SRG classification decision; and (2) a June 6, 2019, assault. See Doc. #34-4 at 36. Accordingly, plaintiff failed to exhaust his administrative remedies relating to any distinct procedural due process claims concerning his readmission into DOC custody on November 4, 2019. See Simmons, 2018 WL 3596748, at *3 (holding that plaintiff is required to "exhaust his administrative remedies for each claim he asserts in federal court[]" (citation and quotation marks omitted)).

14, 2019." Id. at 9, ¶66. Plaintiff's appeal of his SRG

designation asserted:

> Basically I was on the phone with my girl talking about
> a local rapper who apparently is the leader of the bloods
> & the convo was about his prior gun charges. After the
> call I was under investigation & placed in seg. Then at
> the hearing I was shown a fake Facebook page of me with
> the rappers music video on the timeline. Still there is
> no substantial evidence to designate me as a blood member
> because truth be told I'm not a blood member on my ticket
> it says that I admitted to being a blood and that the
> Facebook was mine and I did not say that.

Doc. #34-5 at 5 (sic).

Plaintiff further asserted: "There was no evidence against

me on my behalf saying any gang stuff or in any gang pictures

with anyone affiliated with a gang!" Id. at 6. Plaintiff argued

that he did not "even have time to be involved in any dumb

activity especially involving a gang. I am being wrongly &

falsely accused and something has to be done because now this is

messing up my bid[.]" Id.

Defendants do not argue that plaintiff's SRG designation

appeal was untimely. Nor do they assert that plaintiff failed to

complete the SRG designation appeal process. Rather, defendants'

only argument as to exhaustion is that plaintiff's SRG

designation appeal "did not raise concerns that he had no notice

of the hearing or charges against him or that Defendants failed

to conduct an investigation." Doc. #34-1 at 10. Consequently,

defendants contend, "Plaintiff's SRG designation appeal cannot

constitute exhaustion for Plaintiff's procedural due process
claims, as the appeal does not provide officials with notice of
the gravamen of the procedural due process issues raised by the
Plaintiff in his operative complaint." Id. at 10-11.

> The exhaustion requirement of the Prison Litigation
> Reform Act ("PLRA") affords "corrections officials time
> and opportunity to address complaints internally before
> allowing the initiation of a federal case." Brownell v.
> Krom, 446 F.3d 305, 310 (2d Cir. 2006) (internal
> quotation marks omitted). Consistent with this purpose,
> a prisoner must allege facts sufficient to alert
> corrections officials "to the nature of the claim," and
> "provide enough information about the conduct" at issue
> "to allow prison officials to take appropriate
> responsive measures." Johnson v. Testman, 380 F.3d 691,
> 697 (2d Cir. 2004) (internal quotation marks omitted).
> The burden is not a heavy one; it can be analogized to
> notice pleading. See id.

Singh v. Lynch, 460 F. App'x 45, 46-47 (2d Cir. 2012).

Thus, a grievance need not "lay out the facts, articulate
legal theories, or demand particular relief. All the grievance
need do is object intelligibly to some asserted shortcoming."
Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004) (citation
and quotation marks omitted).

Plaintiff's SRG designation appeal indicates that after
discussing a rapper with his girlfriend, he was -- apparently to
his surprise -- "under investigation & placed in Seg." Doc. #34-
5 at 5. Plaintiff further contends that "there was no evidence
against me on my behalf saying any gang stuff or in any gang
pictures with anyone affiliated with a gang!" Id. at 6. He also

appears to assert that he was surprised at the hearing to be confronted with "a fake Facebook page[.]" Id. at 5. Such allegations do not directly implicate the notice plaintiff received before the SRG designation hearing or the adequacy of the investigation. However, the appeal does "object intelligibly" to the process used to designate him to SRG status, and provides "enough information about the conduct of which [plaintiff complains] to allow prison officials to take appropriate responsive measures." Johnson, 380 F.3d at 697. "Affording Plaintiff special solicitude as a pro se plaintiff, the Court finds that material issues of fact exist as to whether Defendants were on notice of [plaintiff's] potential" claims relating to the notice plaintiff received and the adequacy of defendants' investigation. Caimite v. Rodriguez, No. 9:17CV00919(GLS)(CFH), 2020 WL 6530780, at *12 (N.D.N.Y. Apr. 9, 2020), report and recommendation adopted, 2020 WL 5651672 (N.D.N.Y. Sept. 23, 2020). Accordingly, the Court cannot find, on this record, that defendants have established that no material dispute of fact exists as to whether plaintiff adequately exhausted these claims. The Court will consider the merits of plaintiff's procedural due process claim relating to his June 4, 2019, SRG hearing and SRG designation.

### D.   Procedural Due Process -- Merits

Plaintiff asserts that the June 2019 SRG hearing and

designation violated his right to procedural due process because he received "inadequate notice" of the hearing and "no valid investigation" took place. Doc. #1 at 1, 2.

To prevail on a Fourteenth Amendment procedural due process claim, plaintiff "must be able to demonstrate (1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." Proctor v. LeClaire, 846 F.3d 597, 608 (2d Cir. 2017) (citations and quotation marks omitted).

Defendants do not contest that plaintiff was deprived of a liberty interest. Thus, the question for the Court is whether plaintiff was afforded constitutionally sufficient process before being deprived of that interest. The Court finds that he was.

When evaluating a procedural due process claim, "[t]he nature of the restrictive confinement dictates the type of process that is due." Trimmier v. Cook, No. 3:20CV00396(KAD), 2020 WL 5231300, at *7 (D. Conn. Sept. 2, 2020) (citing Benjamin v. Fraser, 264 F.3d 175, 190 (2d Cir. 2001)).

In a disciplinary proceeding, "an inmate is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense." Orellano v. Papoosha, No.

3:20CV00480(VLB), 2021 WL 2109132, at *5 (D. Conn. May 25, 2021) (citing Wolff v. McDonnell, 418 U.S. 539, 561-70 (1974)).

By contrast, in an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding" the matter. Hewitt v. Helms, 459 U.S. 460, 476 (1983).

The Court finds that Hewitt properly governs the analysis in this case. Defendant Cuzio has submitted a declaration indicating that "[i]nmates can be designated as an SRG member in multiple ways. They may be issued a disciplinary report for SRG affiliation. Alternatively, inmates may be designated pursuant to a 'long form' SRG designation hearing, which administratively classifies an inmate as an SRG member without any disciplinary charges." Doc. #34-9 at 2.

Plaintiff was designated as an SRG member following a long form SRG designation hearing. See Doc. #34-2 at 5, ¶35. "Plaintiff was not issued a disciplinary report 'ticket' or disciplinary charges." Id. at 5, ¶36. Rather, plaintiff's "past and probable present involvement with SRG activity formed the basis for" his SRG designation. Lewis v. Cook, No. 3:19CV01454(JCH), 2021 WL 4477392, at *11 (D. Conn. Sept. 30, 2021). Specifically, the hearing officer indicated that "[b]ased upon the evidence presented at the hearing, including but not

limited to the screenshots of Mr. Simms' Facebook profile and posts provided by the intelligence unit, transcripts of a phone call made by Mr. Simms, and Mr. Simms' own spoken testimony, which confirmed the information provided by the intelligence unit, [the hearing officer] determined that Mr. Simms should be designated as an SRG blood." Doc. #34-9 at 5.

In light of this information, the DOC determined that plaintiff "poses a threat to the safety and security of the department if housed in general population." Id. at 21. When determining whether a restraint on liberty is administrative, courts within this district have concluded that "[a]dministrative purposes include restraints that are employed to achieve a legitimate governmental interest in protecting the safety of the individual, prison staff or the general prison population." Friedland v. Otero, No. 3:11CV00606(JBA), 2014 WL 1247992, at *4 (D. Conn. Mar. 25, 2014). Consequently, because "the defendants have provided evidence that the administrative decision to isolate SRG members, including [plaintiff], is reasonable for the protection of the prison population[,]" the Court finds that plaintiff was entitled to the process required under Hewitt. Lewis, 2021 WL 4477392, at *11.

Hewitt requires that a party "receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding" the matter. Hewitt,

459 U.S. at 476.

Upon conducting an initial review of plaintiff's Complaint, the Court determined that "[i]f, in fact, Simms was designated following an administrative classification hearing, the allegations belie a procedural due process claim as he was advised of the charges and permitted to state his views (which he did)." Doc. #16 at 8. The Court now holds that the undisputed facts establish that plaintiff received the process required under Hewitt.

First, plaintiff received "some notice of the charges against him." To satisfy Hewitt's notice requirement, "[a] brief summary of the factual basis for the classification review suffices, and due process does not require that the inmate receive an exhaustive list of grounds believed to justify placement and a summary of all evidence that will be used against him." Alston v. Cahill, No. 3:07CV00473(RNC), 2012 WL 3288923, at *7 (D. Conn. Aug. 10, 2012) (citation and quotation marks omitted). The undisputed evidence reflects that plaintiff received both verbal and written notice that he would be subject to an SRG designation hearing in advance of that hearing. See Doc. #34-8 at 3 ("During the interview I explained to Mr. Simms that he would be placed in the Restrictive Housing Unit pending a hearing to determine whether he was presently affiliated with the SRG bloods."). Furthermore, plaintiff was provided with

notice that "he would be given a designation hearing based on information from telephone or mail monitoring" as well as his "current social media." Doc. #34-10 at 5; see also Doc. #34-11 at 3-4. Taken together, such notices informed plaintiff of the evidence "leading to consideration for [SRG] placement[.]" Alston, 2012 WL 3288923, at *8 (quoting Wilkinson v. Austin, 545 U.S. 209, 226 (2005)). Thus, the undisputed facts establish that plaintiff was made aware of both the charges against him and the evidence supporting those charges. The Court finds that plaintiff received sufficient notice under Hewitt.

Moreover, plaintiff had an opportunity to present his position in connection with the hearing. "A written statement from the inmate generally satisfies this requirement, although the hearing officer may permit an oral presentation if he would find it more useful." Muniz v. Cook, No. 3:20CV01533(MPS), 2021 WL 5919818, at *4 (D. Conn. Dec. 15, 2021). Plaintiff indicated at his deposition that he "wrote a statement on my behalf of me not being a gang member." Doc. #34-4 at 13; see also Doc. #34-2 at 6, ¶44 ("Plaintiff wrote and submitted a written statement which was considered by the hearing officer during his hearing."). Furthermore, "plaintiff testified on his own behalf at the hearing." Doc. #34-2 at 6, ¶47. Thus, the undisputed evidence of record establishes that plaintiff had the opportunity to present his views to the prison official charged

with deciding the matter.

In sum, the undisputed facts establish that plaintiff (1) was given notice of the charges against him, and (2) had an opportunity to present his views before being given an SRG designation. Accordingly, the undisputed evidence of record establishes that plaintiff received constitutionally sufficient process as to his Spring 2019 hearing and subsequent SRG designation. Summary judgment is **GRANTED** as to the procedural due process claims.

## IV.  CONCLUSION

All claims brought against defendants Cuzio, Durant, Rivera, Finnucan, Acevedo, and Tardif in their **official capacities** are **DISMISSED,** because these defendants are not alleged to be employed at the facility where plaintiff is currently held.

The undisputed evidence of record establishes that plaintiff failed to exhaust his administrative remedies as to his substantive due process claims against defendants Papoosha and Santiago. Accordingly, summary judgment is **GRANTED** as to plaintiff's substantive due process claims. Only the substantive due process claims were permitted to proceed against defendants Papoosha and Santiago; as such, summary judgment is **GRANTED** as to defendants Papoosha and Santiago, in both their individual and official capacities.

The undisputed evidence of record establishes that plaintiff received all process that was due before being designated to SRG status in June 2019. Accordingly summary judgment is **GRANTED** as to plaintiff's procedural due process claim. Only the procedural due process claim was permitted to proceed against defendants Cuzio, Durant, Rivera, Finnucan, Acevedo, and Tardif; as such summary judgment is **GRANTED** as to defendants Cuzio, Durant, Rivera, Finnucan, Acevedo, and Tardif, in their individual capacities.

Judgment shall enter in favor of all defendants.

The Clerk shall close this case.

It is so ordered this 4th day of August, 2022, at Bridgeport, Connecticut.

_____/s/_____

HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE